**GARRARD et al. v. HENDERSON et al.**

**No. 13911.**

Court of Civil Appeals of Texas. Dallas.

Feb. 13, 1948.

Otis Bowyer, Jr. and Albert S. Reagan, both of Dallas, for appellants.

F. W. Bartlett, Jr. and Horace G. Goodrich, both of Dallas, for appellees.

BOND Chief Justice.

This suit was instituted on June 3, 1947 by plaintiff George E. Henderson; subsequently seventeen other parties filed separate interventions against defendants Marie Garrard and Herman Garrard, jointly and severally, for their respective debts growing out of separate similar transactions entered into by each of the parties with the defendant Marie Garrard, and for approximately the same amount, aggregating the sum of $21,250; each party victimized by entering into a written contract with the defendant Marie Garrard for the purchase of certain designated household furniture in an apartment belonging to and occupied by the said defendant Marie Garrard and her minor son, Herman Garrard, located at 4837 Worth Street, in the City of Dallas, Texas. Each of the several parties paid the consideration recited in his contract for the same furniture, and upon the following defeasible covenant and agreement, as follows: "If for any reason the apartment is not available for occupancy by the above party concerned in this transaction on or before ——————, the above amount of —————— to be returned in full, otherwise this becomes a complete and final bill of sale upon the date of occupancy by the parties concerned in this contract, and is subject to the rental agreement." The rental agreement and list of furniture was attached to each of the contracts. The apartment was never made available to any of the contracting parties, nor was the furniture delivered or the consideration paid therefor refunded to them.

In this suit plaintiff and interveners each sought separate judgment for the amount each advanced as shown in the aforesaid contract and for appointment of a receiver to take charge of the apartment, collect all rents due by the various tenant-lessees occupying the four units in the apartment, to sell the apartment and apply the proceeds of sale to the satisfaction of the respective debts. In brief, each of the separate causes of action is sounded in tort growing out of the aforesaid contracts.

The court, trying the case without a jury, rendered judgment against defendant Marie Garrard, on her confession of liability made in open court, in favor of the plaintiff and each of the interveners for the full amount of their respective debts, from which there is no appeal; and the court entered judgment against the defendant Herman Garrard for the sum of $1,200 "to be divided ratably between parties plaintiff and parties intervener", from which Herman Garrard, through his guardian ad litem, has appealed. The court further decreed that the property known as 4837 Worth Street, in Dallas, was not a homestead of the defendant, basing the conclusion on the ground that "Herman Garrard having been self-supporting for sometime prior to the purchase of the property involved herein, he cannot be claimed as being a dependent in order to entitle Marie Garrard to a homestead exemption"; and that "Marie Garrard having used the apartment house and furniture in the furtherance of a scheme and a business to defraud innocent persons, she cannot now claim it as a homestead, exempt from these persons she defrauded"; hence the court appointed a receiver to administer the estate of the defendant Marie Garrard, sell the apartment house and premises, and all of the listed furniture, at private or public sale in order that the parties in suit may be compensated on a ratable basis. To which last decrees each of the defendants excepted, gave notice of and duly perfected their appeal.

The court upon request filed findings of fact and conclusions of law. They were duly excepted to by appellants. A complete statement of facts accompanies this record.

The testimony, as shown from the agreed statement of facts, is undisputed: In June 1944, appellant Marie Garrard, then a widow, purchased a four-unit apartment located at 4837 Worth Street, in the City of Dallas. She owned no other property nor has she purchased any since. Soon after purchasing said property, Mrs. Garrard and her son Herman Garrard, then seventeen years of age, who had never married and who at that time had never had a gainful occupation, moved into the house, occupying the unit designated in the record as No. 2, and ever since said time the two have been occupying and using it as their home. At the time Mrs. Garrard purchased and moved into the apartment, June 1944, Herman was then, and had been all of his life, living with his mother as a constituent member of her household, each supplying the needs and maintenance of the home to the extent of their means, living together in a common interest, having a common object, subsisting in common, and directing their attention to the promotion of their mutual interests and social welfare. The record shows that the son was always obedient to the commands of the mother; and he and the mother each shared in the woe and weal of the other, as the son testified: "Everything we did, we did together * * * I mean we have always shared everything alike * * * We have always been pretty close together * * * I have never tried to hide anything from her * * * I don't know whether she ever tried to hide anything from me." Herman, during the years of his early youth and prior to the purchase of the aforesaid property by his mother, owned no property, other than an interest in some furniture that he claimed to have purchased. He had credit rating with a furniture store, where he purchased the furniture. Herman relied on his mother, after the death of his father in 1929, for his support, care, nurture and well being. She supplied all of his needs, raiment,

food and lodging, until in November 1944, when Herman was inducted into government military service, the Navy; thus, in line of duty he left his mother's home for the duration of War II; but, however, carried on his social relationship with his mother, writing her daily and causing $50 monthly benefit allowance to be deducted from his salary and allotment from the Government for her use and benefit. In February 1946, Herman was discharged from government service, came back to the home of his mother, at 4837 Worth Street, Dallas, Texas, where he has been living ever since, and was living at the time of the institution of this suit.

Appellants contend as ground for reversal that the uncontroverted testimony was sufficient to show that the relation between Marie Garrard and her minor son was of such a character as to constitute their association "a family," and that the mother was the head thereof as a matter of law; that the court was without power to appoint the receiver, divesting title and possession of the homestead out of the defendants, thus according a preferential right to the defrauded creditors whose debt or claims were unenforceable against the property which had been occupied under circumstances giving rise to the homestead right in the family.

The only real contest in this appeal is as to the homestead character of the property, growing out of the relationship and association of the mother and minor son at the time of the purchase and occupancy of the apartment in question and which had never been abandoned or waived. Our Supreme Court has held that the family relation is one of status; that there must be legal or moral obligation on the head of the family to support the other member or members and there must be a corresponding dependence on the part of such member or members for support; Roco v. Green, 50 Tex. 483. A social status greatly exists between parents and their children; certainly there is the highest legal and moral obligation for parents to support their children. A mother and children, of all associations, is the highest social status to constitute

a family; so, where there is a moral or legal·obligation on the part of one to support and care for the other, and where the necessity for such care ·and support exists, it is a family within the terms of law. In such cases, the family is entitled to homestead exemption. A homestead is an "estate" created for the benefit of the units of the family as well as the protection of the family as a whole, and when once it comes into existence, it is not defeated while occupied by any con-·stituent members of the family, including minor children. The only way for property to lose its homestead, after it has been dedicated as a homestead, is by death, abandonment or alienation.

■ In the case of Central Life Assurance Society v. Gray, Tex.Civ.App., 32 S. W.2d 259, writ ref., the court held that where a brother owes moral obligation to support a sister ·and necessity for such support exists, there is "family relation," and right to homestead exemption. Dependency of a sister on brother may not be absolute to create family relationship within exemption law. In the case of Wolfe v. Buckley, 52 Tex. 641, our ·Supreme Court held that a widow was the head of a family and entitled to homestead when she had voluntarily assumed the care of the children of a step-daughter and they were dependent on her for moral training and for partial support and maintenance. In American National Bank v. Cruger, 31 Tex.Civ.App., 17, 71 S.W. 784, 789, writ ref., the court held that a single woman who voluntarily assumed responsibility for the rearing, training and nurture of certain nephews and nieces, and who contributed to their support and maintenance, was the head of such family, notwithstanding such nephews and nieces were the owners in their own right of substantial property. We quote from the opinion in that case, as follows: "The word 'dependence,' as here used, · is not restricted to support and maintenance,— food and clothing. It is intended to include moral and mental training, and the care and nurture which may be prompted by the feelings of affection which the testimony indicates existed between this aunt and the ·children of her unfortunate sister." Authorities may be multiplied, showing similar family status to which homestead exemption had application. ·

■ The policy of courts is to uphold and enforce the homestead laws, "notwithstanding the fact that in doing so they sometimes directly assist a dishonest debtor in wrongfully defeating his creditor." 22 Tex.Jur., p. 13, sec. 4. The general policy of the State with reference to. the homestead laws has been fully discussed by our Supreme Court, speaking through Chief Justice Cureton in Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35.

■ The · defendant, Marie Garrard, having acquired in June 1944, the premises at 4837 Worth Street, for the purposes of a homestead, and having immediately moved thereon and occupied the same as such, with her minor son; and having continuously used, the· same for such purposes to the present date; and having no other homestead, and having never abandoned the· same, the aforesaid property constitutes her homestead,; therefore, exempt under the Constitution and laws of this State.· Art. 16, Secs. 50, 51, Constitution of the State of Texas, Vernon's Ann.St.; Arts. 3832, 3833, Revised ·Civil Statutes, Vernon's Ann.Civ.St. arts. 3832, 3833.

■ It · will be noted that ·by the Constitution and laws of Texas, the homestead is exempt to "the family," and although the homestead is defined, there is no definition in either the Constitution or the statute as to what is meant by "the family." This was apparently left to judicial interpretation. In the case of Reconstruction Finance Corporation v. Burgess, Tex.Civ.App., 155 S.W.2d 977, writ ref., the Waco Court of Civil Appeals, following the pronouncement of Chief Justice Cureton in Woods v. Alvarado State Bank, 118 Tex. 586, 19 S.W.2d 35, held that "the homestead right is ·to be regarded not as a mere privilege accorded to the head of the family for the benefit of the family as a whole, but as an estate created for the protection of each constituent member of the family. * * * that an unmarried daughter who remains continuously with the family is as much a component member thereof as is the husband, wife, or

any minor child." [155 S.W.2d 980.] Citing authorities. We think that there is no better law established in Texas than that the possession and use of real estate by one who owns it, and who, with his family, resides upon it, makes it the homestead of the family in law and in fact. The mere fact, if such could be said to be a fact in this case (which is challenged by appellants as beside the record; and which we sustain), that "Herman Garrard having been self-supporting for sometime prior to the purchase of the property involved, he cannot be claimed as being a dependent in order to entitle Marie Garrard to a homestead exemption"; or, the fact that "Marie Garrard having used the apartment house and furniture in the furtherance of a scheme and a business to defraud innocent persons, she cannot now claim it as a homestead, exempt from those persons she defrauded", will not divest the family, mother and minor son, of their homestead. Saints and sinners have equal constitutional rights to a homestead. The exemption law shields the home of a debtor's family from the claims of his creditors, regardless of his station in life or society. We gather from the record that appellant Marie Garrard is in unfortunate straits; imprisoned in jail for breach of her various defeasible agreements to refund the money on contracts; that public opinion is against her; that pressure and hysteria have edged into the case. Be that as it may, judicial poise demands that the law be applied with a deaf ear to such situation. There shall be no "corruption of blood, or forfeiture of estate" because of conviction of crime. Texas Bill of Rights. Vernon's Ann.St.Const. art. 1, § 21. It will be noted from the record here that the appellees do not claim any kind of a lien, legal or equitable, against the real estate involved. The appellees are in the category of general creditors and are not entitled to the unusual relief of receivership. Elliott Addressing Machine Co. v. Campbell, Tex.Civ.App., 159 S.W.2d 967; Adams v. Impey, Tex.Civ.App., 131 S.W.2d 288.

We pretermit any further discussion of the homestead law, believing that what is said in the above-cited cases is sufficiently illuminative of the question to indicate that the trial court in the instant case erred in holding that Mrs. Marie Garrard and her seventeen-year-old son did not constitute a family and were not entitled to the exemption of their homestead.

Furthermore, this suit being upon contracts and breach thereof; or sounded in tort upon contracts, there is no basis in pleading or proof for the judgment against the minor Herman Garrard. The fraud alleged against the defendants, jointly and severally, and the proof that the minor was present and knowing the fraud being perpetrated on the appellees by his mother, and his failing to give warning of such fraudulent dealings, or in assisting the mother in procuring the contracts by showing appellees the furniture involved, do not give rise to liability against the minor, in favor of all the defaulted creditors to be credited ratably to appellees' debts. "An infant is not liable in an action sounding in tort if the effect of holding him liable would actually constitute the enforcement of liability on contract, but he may be liable for a distinct and willful or positive wrong which is independent of the contract." 43 C.J.S., Infants, § 89. "A fraudulent act to render an infant chargeable therewith must be wholly tortious,—if the action is substantially grounded in contract, he is not liable." 31 Corpus Juris, p. 1093, note 59(a); See, also, 43 C.J.S., Infants, § 90. It is elemental that a minor is not liable on his contracts. "It has long been the policy of the law to afford protection to infants. Lacking in judgment and understanding sufficient to enable them to guard their own interests, the law shields them against their own improvidence and the designs of others." 23 Tex.Jur. p. 696. The record reflects that the appellees are trying to recover damages, for their debts to the value of furniture which he contracted, or procured his mother to contract, to deliver, but which he and his mother failed to perform. Such, we think, is not recoverable against the minor. Whatever he did or encouraged to do was at the behest of his mother. He was not an emancipated minor, not personally liable for the defaults of his mother.

For the reasons stated, the judgment of the court below is reversed, other than the money judgments against appellant Marie Garrard, and the setting aside of a deed executed by Marie Garrard to Herman Garrard to the real estate involved, entered by agreement of the parties, to which no appeal was taken; and judgment is here rendered in favor of appellants that the orders and judgments other than those above, are set aside, that the apartment in question constitutes appellants' homestead, exempt from the debts and judgments of appellees; hence, the receiver appointed by the court is removed, the receivership vacated, and the receiver dircted to render statement of the amount of rents received since his appointment, and immediately pay over all moneys on account thereof to appellant Marie Garrard, exempt of all claims, and court costs. All costs incidental to the appointment of receiver will be taxed against and collected from appellees, including any fee the trial court may allow the receiver, or his attorney, if any, for services rendered. This order is immediately effective, and appropriate process may issue from this court to execute same. The appellant Herman Garrard shall go hence, with all costs taxed against appellees.

Reversed and rendered.