Whitener, Price, Lewis & Steinberg, Lawrence E. Steinberg, Dallas, for appellant.

Parnass & McGuire, Irwin H. Steinhorn, Irving, for appellee.

**HENRY S. MILLER COMPANY, Appellant,**

v.

**Nancy SHOAF, Appellee.**

**No. 4263.**

Court of Civil Appeals of Texas.

Eastland.

Oct. 25, 1968.

Rehearing Denied Nov. 22, 1968.

WALTER, Justice.

Nancy Shoaf filed suit against Henry S. Miller Company to remove cloud from title to her real estate she claimed as a homestead. Miller had a judgment dated November 16, 1965, against Joseph Shoaf, the former husband of Nancy Shoaf. The property was sold under an execution and Miller was the purchaser and received a Sheriff's deed to the property.

Based on the jury's answers to special issues, the court rendered judgment that the property was the homestead of Nancy Shoaf and rendered judgment in her favor. Miller has appealed.

Miller secured a judgment against Joseph Shoaf on the 16th day of November, 1965. Nancy Shoaf was divorced from Joseph Shoaf on the 4th day of February, 1966, at which time the subject property was awarded to her as her separate property and estate.

Mrs. Shoaf pleaded that on March 16, 1965, and at all times thereafter the subject property was her homestead and, therefore, not subject to execution.

The jury found that at the time of the Shoaf divorce there was a moral obligation on the part of Nancy Shoaf to support her mother; that such moral obligation has continued to exist from the date of the divorce to the present; that at the time of the divorce Nancy's mother was dependent upon her and that such dependence has continued until the present.

Miller says: "The points of error upon which this appeal is predicated all mainly pertain and concern the fact that Appellee's own evidence showed her mother was not dependent upon Appellee for support."

Nancy Shoaf testified substantially as follows: I live at 2702 North Britain in Irving, Texas where I have resided for eleven years. Joe and I purchased this house about the time we were married. Soon after my father died in November, 1958, my mother, Mrs. Twila Kenney, came to live with us. My mother paid the funeral expenses by making a loan at the bank. She was working at Jacques Ready to Wear in Preston Center. My mother was emotional and upset and almost had a breakdown. She stayed with us about a year and then moved to Dallas near her work where she stayed for about a year and a half. During this time she stayed with me nights and on week ends. Mother was unable to get along financially and she moved in with my husband and me in November, 1964. She was also in bad health. Her ailment has to do with the circulatory system and she has sciatic neurosis. It affects her legs and feet. My husband and I were divorced February 4, 1966, and my mother was living with us at the time. Mother moved in with us and continued to live with us and has been living with me ever since November, 1964. She is drawing $98.00 per month from her Social Security. She was making $55.00 per week when she quit work. My mother has no other children. It is difficult to say exactly but I usually gave my mother over Two Hundred Dollars per month.

Discussing the homestead question, Dean Angus S. McSwain in XV, Baylor Law Review at page 40 said:

"The homestead described in the Texas Constitution is referred to as the homestead of a family. In order for either a business or residence homestead to exist, a family must exist. The requirement of a family is met wherever there is a group of people who have a social status as a family—that is, a group living together subject to one domestic government. There must be a legal or moral responsibility on the head of the family for the rest of the members of the family, and a corresponding dependence of the others upon the head of the family. Since the requirement of a family is the same for a residence homestead as for a business homestead, no extended treatment of the question of the existence of the family will be undertaken here."

In Central Life Assur. Soc. (Mutual) v. Gray et al., 32 S.W.2d 259 (Tex.Civ.App., writ ref. 1930), the court at page 260 said:

"Our Supreme Court has held that the family relation is one of status, that there must be legal or moral obligation on the head to support the other member or members, and that there must be a corresponding dependence upon the part of such member or members for such support. Roco v. Green, 50 Tex. 483, 490. Such social status exists between a brother and sister when there is a moral obligation on the part of the brother to support and care for his sister and when the necessity for such care and support exists. In such cases they constitute a

family, and the brother as the head thereof is entitled to a homestead exemption."

■ We cannot agree with appellant's contention that appellee's evidence shows her mother was not dependent upon her for support.

Special issue number 1 asked whether at the time Nancy Shoaf was divorced from Joseph Shoaf there was a moral obligation on the part of Nancy to contribute to the support of her mother. In connection with this issue the court instructed the jury that: "—you are instructed that there is a moral obligation on the part of an adult daughter to support and care for her mother when there is a necessity for such care and support, but that the necessity for such care and support need not be absolute in order to give rise to such moral obligation."

Appellant's point 2 is as follows:

*"Point Two:*

The error of the Court in submitting, over appellant's objection, Special Issue No. 1 in the Court's charge because the instruction given by the Court in connection with said issue states 'That the necessity for such care and support need not be absolute in order to give rise to such moral obligation', and such instruction and definition permits the Jury to find any degree, which might be quite minute, of necessity for such care and support, and if the word 'absolute' was to be included in such issue, there should have followed therein language to the effect that such care and support must be substantial. (Germane to Assignment of Error No. 2.)"

Appellant says that such point is germane to assignment 2, but this is a mistake and it should have said it was germane to assignment number 3 which is as follows:

"The Court erred in submitting, over defendant's objections, Special Issue No. 1 in the Court's charge because the instruction given by the Court in connection with said issue states 'That the necessity for such care and support need not be absolute in order to give rise to such moral obligation', and such instruction and definition permits the Jury to find any degree, which might be quite minute, of necessity for such care and support, and if the word 'absolute' is included in such issue, there should have followed therein language to the effect that such care and support must be substantial."

In appellant's objections to issues and instructions found on page 22 and 23 of the transcript, there is no showing that they were submitted to the court for his consideration before the case was submitted to the jury. In Gowan et ux v. Reimers, 220 S.W.2d 331 (Tex.Civ.App., 1949, writ ref. n. r. e.), the court said:

"The function of a point of error is to call attention to some act of the court complained of as constituting error. The burden is upon the appellant to show that the record supports his contention made, and to indicate with certainty that part of the record supporting it. May v. Consolidated Underwriters, Tex.Civ.App., 170 S.W.2d 295, writ refused, w. m. We cannot take cognizance of any purported act of the court not disclosed by the record. George v. Senter, Tex.Civ.App., 194 S.W.2d 290, writ refused, n. r. e. It is the responsibility of an appellant to make a written application to the clerk for the transcript directing what it shall contain, and from this application or direction transcript is compiled and furnished to the appellant. Rule 376, T.R.C.P. It is the settled rule in this state that the appellate court will consider only matters disclosed by the record furnished. The burden is upon the appellant to so furnish to the reviewing court a record which affirmatively discloses the errors complained of, and that they are of such a nature as to injure him. 3 Tex.Jur. 424, sec. 302."

■ Notwithstanding the condition of the record, we find that such special issue

**246**

was properly submitted and Central Life Assur. Soc. (Mutual) v. Gray, supra, is authority for such holding.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.